WILFRED ROBSON, ADMINISTRATOR *AD PROSEQUENDUM* OF THE ESTATE OF MARY E. ROBSON, DECEASED, PLAINTIFF-APPELLANT, v. VICTOR RODRIQUEZ, DEFENDANT-RESPONDENT.

Argued March 4, 1958—Decided April 28, 1958.

Mr. *Martin L. Haines* argued the cause for the appellant (*Messrs. Dimon, Haines & Bunting,* attorneys).

Mr. *Robert W. Criscuolo* argued the cause for the Unsatisfied Claim and Judgment Fund (*Messrs. Parker, McCay and Criscuolo,* attorneys).

Mr. *David M. Satz, Jr.,* argued the cause for the intervenor (*Mr. Harold Kolovsky,* Acting Attorney-General).

The opinion of the court was delivered by

PROCTOR, J.   The primary question raised by this appeal is the constitutional validity of *N. J. S. A.* 39:6–70(*d*) of the Unsatisfied Claim and Judgment Fund Law, *L.* 1952, *c.* 174 (*N. J. S. A.* 39:6–61 *et seq.*) which precludes a person who sustains personal injury or property damage caused by a financially irresponsible motorist from receiving payment out of the Fund, if at the time of the accident he was operating or riding in an uninsured motor vehicle owned by him, or his spouse, parent or child.

The plaintiff is the administrator *ad prosequendum* of Mary E. Robson, who was killed in an automobile accident on June 5, 1955.   The accident involved a collision between the automobile owned and operated by the decedent and an automobile owned and operated by Victor Rodriquez. Neither owner carried liability insurance.

The plaintiff, after obtaining a consent judgment against Rodriquez for $5,500, applied to the trial court for an order directing payment of the judgment out of the Fund pursuant to *N. J. S. A.* 39:6–69.   The Fund and the Attorney-General, who appeared for the State as an intervenor, opposed the plaintiff's application on the ground that the decedent was operating an uninsured motor vehicle owned by her, therefore, the plaintiff, as her administrator *ad prosequendum*, was precluded from recovery by *subsection* (*d*).   The pertinent provisions of *N. J. S. A.* 39:6–70 read as follows:

"The court shall proceed upon such application, in a summary manner, and, upon the hearing thereof, the applicant shall be required to show
*       *       *       *       *       *       *       *
(d) He was not at the time of the accident, operating or riding in an uninsured motor vehicle owned by him or his spouse, parent or child, and was not operating a motor vehicle in violation of an order of suspension or revocation."

At the hearing below, the plaintiff contended that *subsection* (*d*) creates an arbitrary and unreasonable classification which violates the due process and equal protection

clauses of the Fourteenth Amendment of the Federal Constitution; the concept of equality in our State Constitution, and the prohibition of the enactment of certain private, special or local laws; and that the subsection violates the provision of our Constitution that "every law shall embrace but one object, and that shall be expressed in the title." *Const. Art.* IV, § VII, *par.* 4. Finally, the plaintiff urged that although the subsection purports to prohibit recovery out of the Fund by an applicant who was operating an uninsured vehicle owned by him at the time of the accident, it does not preclude recovery by his personal representative.

The trial court upheld the constitutionality of the statute in all respects and further held that *subsection* (*d*) prohibited recovery by the personal representative of the decedent. *Robson v. Rodriquez,* 44 *N. J. Super.* 262 (*Law Div.* 1957). We granted plaintiff's motion for certification prior to consideration by the Appellate Division. 25 *N. J.* 283 (1957).

Plaintiff contends that the challenged provision of the statute violates the constitutional mandates in that the classification is "arbitrary and capricious" and does not bear a substantial relation to the objective of the statute. Specifically, he argues that there is no rational basis for excluding a person who is injured or sustains property damage when he is operating or riding in an uninsured vehicle owned by him, or his spouse, parent or child, while permitting recovery by an uninsured owner who was not present in his vehicle at the time of the accident. In short, he argues that the subsection is unconstitutional since it does not exclude all uninsured owners from recovery.

██ The guaranty of due process as it applies to cases of the type here under consideration requires only that a law shall not be unreasonable, arbitrary or capricious, and that the means selected shall bear a rational relation to the legislative object sought to be obtained. *Nebbia v. New York,* 291 *U. S.* 502, 54 *S. Ct.* 505, 78 *L. Ed.* 940 (1934); *Schmidt v. Board of Adjustment of City of Newark,* 9 *N. J.* 405, 414 (1952); *Gundaker Central Motors v. Gassert,*

23 *N. J.* 71 (1956). Similarly, the constitutional require-
ment of equal protection is met by legislation that treats
all persons within a class reasonably selected, in a like or
similar manner. *Guill v. Mayor and Council of City of
Hoboken,* 21 *N. J.* 574 (1956); *State v. Garden State
Racing Ass'n.,* 136 *N. J. L.* 173 (*E. & A.* 1947).

The relation of these guaranties to a particular legislative
classification was stated by Justice Heher in the *Guill* case,
21 *N. J.* at *pages* 582 and 583:

"The classification satisfies the constitutional test of equality and
reasonableness if it rests upon some ground of difference having a
real and substantial relation to the basic object of the legislation or
some relevant consideration of public policy. Even though the dis-
tinction be narrow, it suffices if it is reasonably concerned with the
end legitimately in view. *Ring v. Mayor and Council of Borough of
North Arlington,* 136 *N. J. L.* 494 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 24
(1948). If the local legislative action be not plainly unreasonable
or unduly oppressive or discriminatory in this regard, its policy is
not a justiciable question. *Independent Warehouses, Inc., v. Scheele,*
134 *N. J. L.* 133 (*E. & A.* 1946), affirmed 331 *U. S.* 70, 67 *S.
Ct.* 1062, 91 *L. Ed.* 1346 (1947). In the selection of the class for
police regulation, neither 'abstract symmetry' nor 'mathematical
nicety' is requisite. *Lindsley v. Natural Carbonic Gas Co.,* 220
*U. S.* 61, 78–82, 31 *S. Ct.* 337, 55 *L. Ed.* 369, 377–379 (1911);
*Patsone v. Commonwealth of Pennsylvania,* 232 *U. S.* 138, 144,
34 *S. Ct.* 281, 58 *L. Ed.* 539 (1914); *Tigner v. State of Texas,*
310 *U. S.* 141, 147, 60 *S. Ct.* 879, 84 *L. Ed.* 1124, 130 *A. L. R.* 1321
(1940). There is no 'infallible or all-inclusive' test to determine
whether 'a given difference between the subjects of legislation is
enough to justify the subjection of one and not the other to a par-
ticular form of disadvantage'; the nearest approach to a definite rule
is that, while the 'difference need not be great,' the classification can-
not be arbitrary or illusory, but must bear some just and reasonable
connection with the primary object of the legislation; a particular
classification is not repugnant to the Fourteenth Amendment merely
because 'inequality actually results'; every classification of persons
and things for regulation by law produces inequality in some degree;
to vitiate the regulation the inequality must be 'actually and palpably
unreasonable and arbitrary.' *Jamouneau v. Harner,* 16 *N. J.* 500,
520 (1954). See also *Van Riper v. Parsons,* 40 *N. J. L.* 1 (*Sup.
Ct.* 1878); *State v. Guida,* 119 *N. J. L.* 464 (*E. & A.* 1938). It
suffices if the classification have a rational and just relation either
to the fulfillment of the essential legislative design or to some sub-
stantial consideration of policy or convenience bearing upon the
common welfare. * * *

Arbitrary selection can never be justified by terming it classification. Classification must itself be fair and impartial and not arbitrary or illusory, grounded in material distinctions and differences concerned with the central legislative policy; and it satisfies the constitutional standard if there be any conceivable state of facts affording a just ground for the action taken, a difference of degree having material relevancy to the police policy in view. If there be a reasonable distinction of circumstance, there is not the oppressive inequality at odds with the equal protection principle. *Washington National Insurance Co. v. Board of Review,* 1 *N. J.* 545 (1948)."

Thus, if the exclusion of the class selected bears some rational relation to the fulfillment of an essential legislative design or to some substantive consideration of policy bearing upon the common welfare, it is not sufficient to demonstrate that the legislative object might be more fully achieved by another more expansive or inclusive classification, for the Legislature may recognize degrees of harm and hit the evil where it is most felt. *N. J. Restaurant Ass'n. v. Holderman,* 24 *N. J.* 295 (1957). The Legislature has a large measure of discretion in selecting the means of accomplishing its goals, and distinctions of degree will be presumed to rest upon a rational basis if there be any conceivable state of facts which would afford reasonable ground therefor. *Board of Health of Weehawken Tp. v. New York Central R. Co.,* 4 *N. J.* 293 (1950).

Our inquiry, then, is whether there is any conceivable state of facts bearing a reasonable relation to the object of the act which affords a basis for the classification. In other words, is there a sufficient difference, even if only in degree, between those persons who may and those who may not benefit from the Fund, to constitute a basis for the legislative distinction?

The Unsatisfied Claim and Judgment Fund Law is remedial legislation that was enacted as a result of concern over the economic hardship imposed upon persons who sustain personal injuries or property damage, or both, caused by financially irresponsible and uninsured motorists, where the claimants have no other source of compensation. *Dixon v. Gassert,* 26 *N. J.* 1 (1958). Its primary purpose is to

mitigate this evil which springs in the main from the negligent operation of motor vehicles by uninsured persons. To this end the act provides for the creation of a fund, supported by imposts upon uninsured motor vehicle owners and insurance companies, out of which uncollectible judgments obtained against uninsured or unknown motorists can be satisfied subject to certain limitations. (*N. J. S. A.* 39 :6–63).

The classification here assailed applies to any person who operates or rides in an uninsured motor vehicle owned by him or his spouse, parent or child. It does not single out any particular class of persons, but instead proscribes recovery from the Fund whenever injury or damage is sustained by a person so situated. The classification is indicative of a legislative policy of excluding that class of persons who in the main created the need for this remedial legislation, *i. e.,* those persons who inflict injury and are unable to respond in damages to their victims because of their failure to carry liability insurance. The Legislature apparently concluded that as a result of their exclusion persons in this class might be induced to procure liability insurance in order to qualify for recovery from the Fund. Viewed in this light, the exclusion bears a rational relation to the furtherance of the legislative policy since it would tend to reduce the number of uninsured motor vehicles, the evil which made the legislation necessary.

The fact that the classification does not preclude all uninsured owners of motor vehicles from recovery does not impair its constitutional validity. It is the operation or use of a motor vehicle by an uninsured owner that results in his preclusion from recovery under *subsection* (*d*). The Legislature may have concluded that an owner who is not present in his vehicle and could exercise no control over it at the time of an accident is not as great a hazard to either the public or the Fund as an owner who is present in his vehicle at the time of the accident. It is also conceivable that the Legislature did not wish to make mere ownership of an uninsured motor vehicle the test of exclusion,

as it may have considered the possibility that an uninsured owner might permit his vehicle to be operated by an insured driver when the owner is not present. Or that the vehicle might be damaged when not in operation—when it is parked or garaged. That the motor vehicle might be stolen or operated by one without the owner's permission is also conceivable. It may be, too, that the Legislature determined that the preclusion from recovery from the Fund by an owner who sustains injury or damage while he is operating or riding in his uninsured vehicle would probably be sufficient to induce the procurement of liability insurance and thus further the legislative objective of mitigating the evil which necessitated the act without enlarging the classification to include all uninsured owners. The classification is not defective because the legislative objective might have been more fully achieved by a more expansive classification; the Legislature may recognize degrees of harm and in devising a remedy it may proceed cautiously step by step. *N. J. Restaurant Ass'n. v. Holderman, supra,* 24 *N. J.* at *page* 300. We conclude that the classification contained in *subsection* (*d*) bears a rational relation to the fulfillment of the essential legislative design and does not contravene the due process and equal protection clauses of the Federal and New Jersey Constitutions.

▉ Appellant further contends that *subsection* (*d*), *N. J. S. A.* 39:6–70, violates the New Jersey Constitution's prohibitions against certain private, special or local laws. *N. J. Const. Art. IV, Sec. VII, paragraphs* 7, 8 and 9. The test of whether a law constitutes special legislation is essentially the same as that which determines whether it affords equal protection of the laws. It has been expressed in *Budd v. Hancock, Comptroller,* 66 *N. J. L.* 133, 135 (*Sup. Ct.* 1901), as follows:

"A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places, or things from others, upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes."

See also *Passaic v. Consolidated Police and Firemen's Pension Fund Commission,* 18 *N. J.* 137, 146 (1955). Meeting as it does the test of equal protection, *subsection (d)* is not violative of the prohibition against special legislation.

▮ There is no merit in the plaintiff's contention that the title of the statute is constitutionally deficient in that it violates *Art.* IV, *Sec.* VII, *par.* 4 of the *New Jersey Constitution.* The title of the statute here under consideration reads as follows:

"**An act** providing for the establishment, maintenance and administration of an unsatisfied claim and judgment fund for the payment of damages for injury to or death of certain persons and for damages to property arising out of the ownership, maintenance or use of motor vehicles in this State in certain cases."

The plaintiff contends that "*R. S.* 39:6–70(*d*) contains the secondary object of the statute, namely, the enforcing of the obligation to insure automobiles in this State. This object of the legislature is in no way referred to in its title."

*Subsection (d)* does not impose any obligation upon an uninsured owner to procure liability insurance. Instead, it excludes from benefits certain persons who operate or ride in uninsured vehicles owned by them or close relatives. While the procurement of insurance may be a product or result of the exclusion, it is not the object of the legislation.

▮ A title to an act need not be an index to all that it contains and need not set forth all of its exclusions or conditions. It is a label and need only set forth its object, not its product. *Jersey City v. Martin,* 126 *N. J. L.* 353, 363 (*E. & A.* 1941); *Bucino v. Malone,* 12 *N. J.* 330, 343 (1953); *City of Passaic v. Consolidated Police and Firemen's Pension Fund Commission, supra,* 18 *N. J.* at *page* 145. The title of the act recites that only "certain persons" may receive payment out of the Fund for personal injuries or death and that property damages may be recovered only in "certain cases." The title gives clear notice that it is subject to exceptions. It is not requisite that the title state

the reasons underlying the distinction drawn between those who are included and those who are excluded. The title satisfies the constitutional standards.

Plaintiff's final contention is that a literal reading of *subsection* (*d*) does not preclude recovery by him as administrator *ad prosequendum* of the decedent. In support of his contention he points out that each of the three preceding subsections of *N. J. S. A.* 39 :6–70 expressly preclude recovery by the personal representative of the person excluded, while *subsection* (*d*) does not contain such a provision. The preceding subsections read as follows:

"(a) He is not a person covered with respect to such injury or death by any workmen's compensation law, or the personal representative of such a person,

(b) He is not a spouse, parent or child of the judgment debtor, or the personal representative of such spouse, parent, or child,

(c) He was not at the time of the accident, a guest occupant riding in a motor vehicle owned or operated by the judgment debtor and is not the personal representative of such a guest occupant."

A statute will not be construed so as to reach an absurd or anomalous result. *Union Terminal Cold Storage Co. v. Spence,* 17 *N. J.* 162, 166 (1954) ; *Donahue v. Campbell,* 98 *N. J. L.* 755, 763 (*E. & A.* 1923) ; *Jensen v. F. W. Woolworth Co.,* 92 *N. J. L.* 529, 534 (*E. & A.* 1918). When the legislative intention can be ascertained with reasonable certainty, words may be altered or supplied in order to effectuate that intention and to avoid any repugnancy or inconsistency therewith. *Orvil v. Woodcliff,* 64 *N. J. L.* 286, 289 (*E. & A.* 1899). If the literal construction urged by the plaintiff were adopted an uninsured person who sustains damages while operating his vehicle could not recover from the Fund, but if he should die before a suit is instituted, even from causes unrelated to the accident, his personal representative could recover. Such a result would be absurd. The act does not reveal any intention to grant the personal representative of a disqualified decedent greater rights than those possessed by the decedent himself.

Such an imputation would be inconsistent with the readily discernible intention to exclude persons injured in the course of operation and use of an uninsured vehicle. The statute in its entirety reflects an overall design to place a personal representative on the same footing as the decedent whom he represents. See *Giles v. Gassert,* 23 *N. J.* 22 (1956). Accordingly, we hold that the plaintiff as administrator *ad prosequendum* is precluded from recovery from the Fund.

The judgment is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.